REISCHMANN v. L. N. HARTOG CANDY CO. et al.

(Supreme Court, Appellate Term. December 22, 1911.)

1. COURTS (§ 190*)—MUNICIPAL COURTS—APPEAL—PLEADINGS.
Where at the trial in the Municipal Court of summary proceedings for rent it was distinctly claimed that the rent had ceased on the ground that the premises had become untenantable, and the landlord acquiesced in that view, and the trial justice ruled that the answer set up only the defense of untenantability and adjudged that the defense was not sustained, the Appellate Term, on appeal from an order for the landlord, must dispose of the case on the theory that the answer set forth the defense of untenantability.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 190.*]

2. LANDLORD AND TENANT (§ 233*)—ACTION FOR RENT—UNTENANTABILITY—EVIDENCE.
In summary proceedings for rent due under a lease stipulating that rent should cease when the premises became untenantable in consequence of a fire until put into complete repair, evidence *held* to require submission to the jury of the question whether the premises became untenantable and so continued.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 940–944; Dec. Dig. § 233.*]

3. LANDLORD AND TENANT (§ 187*)—ACTION FOR RENT—EVIDENCE—"UNTENANTABLE."
The continued occupation by a tenant of a building after its damage by fire is some evidence of its fitness for occupation, but is not conclusive evidence on the point within the lease providing that on the building becoming untenantable in consequence of a fire the rent shall cease

until .everything is put in complete repair; the word "untenantable" meaning not fit to be rented or occupied by a tenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 770–775; Dec. Dig. § 187.*

For other definitions, see Words and Phrases, vol 8, p. 7217.]

4. LANDLORD AND TENANT (§ 223*)—DAMAGES FOR LANDLORD'S BREACH—LOSS OF PROFITS.

Where a landlord failed to furnish the steam pressure required by the lease, the tenant could recover the actual loss resulting therefrom, but could not recover loss of profits not within the contemplation of the parties and too remote as a result of the breach.,

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 885–893; Dec. Dig. § 223.*]

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Summary proceedings by George M. Reischmann, landlord, against the L. N. Hartog Candy Company, tenant, and others. From an order for the landlord for the amount of the rent claimed to be due and allowing as an offset under the tenant's counterclaim $500, the tenant appeals. Reversed, and new trial ordered.

Argued before GIEGERICH, LEHMAN, and PENDLETON, JJ.

David L. Podell (Sidney Newborg, of counsel), for appellant.
Chas. De Hart Brower, for respondent.

LEHMAN, J. The landlord has obtained a final .order in summary proceedings based upon a petition for nonpayment of rent. The answer denies all the allegations of the petition and then contains a separate defense and counterclaim. The separate defense sets forth that the lease provided that:

"It is further agreed by and between the parties to these presents that in case the building or buildings erected on the premises hereby leased shall be partially damaged by fire it shall be repaired as speedily as possible and at the expense of the party of the first part (the landlord herein); that in case the damage shall be so extensive as to render the building untenantable .the rent shall cease until such time as everything shall be put in complete repair, but in case of the total destruction of the premises by fire or otherwise that then and from thenceforth this lease shall come to an end, provided, however, that such damage or destruction be not caused by carelessness, negligence or improper conduct of the parties of the second part, their agents and servants."

It then alleges that on November 5th a fire occurred "whereby a substantial portion of the building occupied by these tenants was seriously damaged by fire and thereupon became untenantable and uninhabitable." In addition to these allegations, there are other allegations appropriate to a claim of eviction, and also allegations appropriate to a counterclaim for delay in making repairs.

[1] It appears that at the trial it was distinctly stated that the tenant claimed under this defense that the rent had ceased on the ground that the building had become untenantable. The landlord apparently acquiesced in this view, and the trial justice ruled that it sets up only the defense that the buildings had been rendered untenantable, and held that this defense was not sustained by the evidence. I think that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

under these circumstances we must on this appeal interpret the answer as correctly setting forth the defense that the rent had ceased because the building had been rendered untenantable, disregarding the allegations appropriate to some other defense. The real question before us, then, is: Did the tenant make out a prima facie case sufficient to raise a question of fact for the jury upon the issue raised by this defense?

[2] It appears that the demised premises were covered by a building four stories high in the front and three stories in the rear. The front four-story part of the building covered a space of about 50 by 50 feet, and the rear part of the building a space of 60 by 60 feet. A brick partition with one opening on each floor separated the two parts of the building, making them practically two buildings. On November 5th a fire occurred in the rear and apparently pretty completely destroyed it. According to the plaintiff, the machinery and the loads of supplies that were on the top floor went right down to the ground, beams broke through and were completely demolished; in fact, the landlord concedes that this building was rendered untenantable. In the front building the elevator shaft was torn down, the stairs were broken, thousands of gallons of water poured into the rear building had run to the front, and most of the window panes and sashes were broken out. It seems to me that this evidence would, standing alone, almost require a finding that the fire had rendered the building untenantable were it not for the fact that the tenant never vacated the building, but continued its business as a candy manufacturer in the first and second floors of the front building.

[3] It attempts to minimize this occupation by stating:

"We made several attempts to make a little candy and tried to hold some trade that we had, but were unsuccessful, and we had to discontinue."

Whether, however, the tenant did little or much business, it certainly did continue to occupy part of the premises. The word "untenantable" means "not fit to be rented or occupied by a tenant," and the continued occupation by a tenant is some evidence of its fitness for rent or occupation; but it is not conclusive evidence on this point. If the inconvenience of removing from a building not fit for tenancy is greater than the inconvenience of remaining in the building, then the continued occupancy of the tenant is not inconsistent with his allegation that the premises are untenantable. Kip v. Merwin, 52 N. Y. 542. It follows that the trial justice erred in his refusal to submit this issue to the jury.

[4] The tenant also urges that it should under its counterclaim have been permitted to show loss of profits arising from the failure of the landlord to furnish the steam pressure required by the contract. I think the ruling of the trial justice on this point is correct. He has allowed proof of the actual loss which can be traced to this breach; but loss of profits are not shown to have been within the contemplation of the parties and are too remote from this breach.

Order should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.